1   David A. Robinson, Esq. (Bar No. 107613)
    *drobinson@ecg.law*
2   Anjuli B. Woods, Esq. (Bar No. 270014)
    *awoods@ecg.law*
3   Eric G. Salbert, Esq. (Bar No. 276073)
    *esalbert@ecg.law*
4   ENTERPRISE COUNSEL GROUP
    A Law Corporation
5   Three Park Plaza, Suite 1400
    Irvine, California 92614
6   Telephone:   (949) 833-8550
    Facsimile:   (949) 833-8540
7
    Attorneys for Plaintiffs
8

9                     **UNITED STATES DISTRICT COURT**

10        **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

11  M. WESTLAND, LLC, a Delaware              CASE NO. 8:19-cv-01661-JVS-KESx
    limited liability company; DOROTHY
12  SUBLETT-MILLER and WALTER J.              Assigned For All Purposes To:
    MILLER, successor trustees of the Miller   Hon. James V. Selna, U.S.D.J.
13  Family Trust, originally dated October 12, Courtroom 10C
    1979, Amended and Restated February 05,
14  2004, for the estate of Willis L. Miller,  **PLAINTIFFS' REPLY IN**
    deceased, as to an undivided ½ interest;   **SUPPORT OF ITS MOTION FOR**
15  DOROTHY SUBLETT-MILLER and                 **PRELIMINARY INJUNCTION**
    WALTER J. MILLER, successor trustees       **REGARDING THE OPPOSITION**
16  of the Miller Family Trust, originally dated **FILED BY DEFENDANT**
    October 12, 1979, Amended and Restated     **CALIFORNIA DEPARTMENT OF**
17  February 05, 2004, for the estate of       **TRANSPORTATION**
    Dorothy M. Miller, deceased, as to an
18  undivided ½ interest; and LAND
    PARTNERS, LLC, a California limited
19  liability company formerly known as
    LAND PARTNERS CO. LTD,
20
                    Plaintiffs,
21  vs.

22  CALIFORNIA DEPARTMENT OF
    TRANSPORTATION; LAURIE
23  BERMAN, in her official capacity as
    Director, California Department of
24  Transportation; and ORANGE COUNTY
    TRANSPORTATION AUTHORITY, a
25  public entity,

26                  Defendants.

27

28

# TABLE OF CONTENTS

**Page No.:**

I.      **INTRODUCTION**................................................................................ 3

II.     **ARGUMENT** ...................................................................................... 4

    A.    *CALTRANS DUPLICATES THE RIPENESS ARGUMENTS RAISED IN ITS MOTION TO DISMISS* ............................................ 4

    B.    *CALTRANS AVOIDS THE EVIDENCE DEMONSTRATING THAT THE CURRENT PLANS WILL HAVE ADVERSE ENVIRONMENTAL EFFECTS* ............................................... 6

    C.    *BALANCE OF THE EQUITIES FAVORS PLAINTIFFS* ............................ 6

    D.    *PLAINTIFFS SHOULD NOT POST A BOND FOR REQUIRING THE STATE TO FOLLOW THE RULES* ....................................... 8

III.    **CONCLUSION** .................................................................................... 9

1

# TABLE OF AUTHORITIES

2

**Page No.(s):**

3

4

**Cases**

5

*Alliance for the Wild Rockies* 632 F.3d at 1134 .................................................7

6

*Amoco Prod. Co.*, 480 U.S. at 542 ......................................................................7

7

*Bair v. Cal. State DOT*
No. C 10-04360 WHA, 2011 U.S. Dist. LEXIS 72295, at *21-22 (N.D. Cal. July

8
6, 2011)..................................................................................................................7

9

*California ex rel. Van De Kamp v. Tahoe Regional Planning Agency*
766 F.2d 1319 (9th Cir. 1985).............................................................................8

10

*Earth Island Inst. v. United States Forest Serv.*

11
351 F.3d 1291 (9th Cir. 2003).............................................................................4

12

*Earth Island*, 351 F.3d at 1311 .........................................................................7

13

*Lands Council v. McNair*
537 F.3d 981 (9th Cir. 2008)...............................................................................7

14

*Price Rd. Neighborhood Ass'n v. U.S. Dept. of Transportation*

15
113 F.3d 1505 (9th Cir. 1997).............................................................................5

16

*Save Our Sonoran, Inc. v. Flowers*
408 F.3d 1113 (9th Cir. 2005)...........................................................................9

17

*Save Strawberry Canyon v. Dep't of Energy*

18
613 F. Supp. 2d 1177 (N.D. Cal. 2009) .............................................................8

19

20

21

22

23

24

25

26

27

28

# I.     INTRODUCTION

For the most part, defendants California Department of Transportation ("Caltrans") and Orange County Transportation Authority ("OCTA") repeat the same arguments in attempting to oppose Plaintiffs' motion for a preliminary injunction. To avoid needless repetition, Plaintiffs therefore incorporate their points in reply to OCTA's opposition and address only the following new arguments raised by Caltrans:

**A.**     Caltrans, the approving body, argues the "submittal [related to the permanent drainage facility] is still incomplete" (Dkt. 43, Opposition ("Opp.") 20:5) and therefore Plaintiffs' request is premature. **This does not excuse Defendants' failure to *timely* comply with NEPA, the OCTA's failure to *timely* seek Caltrans' approval of the "final" plans the OCTA admits it green lighted for construction, or Caltrans' failure to *timely* supplement its 2015 EIS before the OCTA's commencement of construction.  Simply put, if the Court were to accept this ripeness argument, the Ninth's Circuit "early enough" doctrine would be meaningless and agencies would be free to construct first, study and put out for public comment later (but only if they are sued.)**

**B.**     Caltrans argues Plaintiffs show that harm is possible, but fail to show harm is likely. (Dkt. 43, Opp. 23:8-14.)  **Here, great harm is both possible and *likely in the uncertain event of heavy prolonged rain*.  In this regard, Caltrans fails to address Defendants use of the wrong hydrology standard – a 25-year storm event rather than the legally required 100-year storm event.  Defendants ignore Plaintiffs' evidence regarding the recency of flooding.  Defendants ignore elevation issues presented by the Detention Basin DB-1077.  Finally, Caltrans ignores settled law holding the Court should apply a "sliding scale" analysis when movant establishes either "probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised**

1   and the balance of hardships tips sharply in its favor." *Earth Island Inst. v.*
2   *United States Forest Serv*., 351 F.3d 1291, 1311-12 (9th Cir. 2003) ("*Earth*
3   *Island*"), quoting *Big Country Foods, Inc. v. Bd. of Educ. of Anchorage Sch.*
4   *Dist*., 868 F.2d 1085, 1088 (9th Cir. 1989) (citations omitted) (emphasis added).
5   On such "a sliding scale … the degree of irreparable harm increases as the
6   probability of success on the merits decreases" and vice versa.  *Ibid.*

7           Put another way, Defendants' gamble on no unusually heavy rain winter
8   … putting up mobile home park residents' health and well being as "table
9   stakes."

10          **C.**     Caltrans argues Plaintiffs should be forced to post a bond. (Dkt. 43,
11  Opp. 24:22-25:12.) **Based on the prevailing Ninth Circuit law anything more**
12  **than a nominal bond would be improper for this case brought in the public's**
13  **interest.**

14          For these reasons and those explained in the motion and Plaintiffs' other
15  reply brief, Plaintiffs respectfully request that the Court grant the requested relief.

16  **II.**      **ARGUMENT**

17  **A.**      ***Caltrans Duplicates The Ripeness Arguments Raised In Its Motion To***
18          ***Dismiss***

19          Caltrans argues Plaintiffs' motion is not ripe—the same argument made in its
20  motion to dismiss. (Dkt. 43, Opp., 20:2-22:21.) Accordingly, Plaintiff incorporates
21  its opposition to Caltrans' motion to dismiss. (Dkt. 44.)

22          Caltrans argues that Detention Basin DB-1077 "appears to be Plaintiffs'
23  biggest concern." In so doing, Caltrans dismisses this concern—not with the
24  required "hard data" analysis regarding environmental impacts and possible
25  alternatives that substantively address or rebut Plaintiffs' findings—but rather with
26  a blanket statement the Detention Basin "has not been constructed." (Dkt. 43, Opp.
27  20:27-21:1.) Caltrans previously represented that they would determine whether

28

4

1    there was a need for a supplemental EIS by January 31, 2020; and now, Caltrans

2    represents that they have not yet received a complete applications for approval, that

3    the January 31, 2020 date will not likely be met, and they will determine whether a

4    supplemental EIS is required at some point in the future when they receive an

5    application. (Dkt. 43-1, ¶¶12-15, 22.)

6         This does not change the fact the Detention Basin is *an integral part* of the

7    plans the OCTA now admits it "approved and released … for construction" in

8    December 2018 (Dkt. 50, 10:17); the fact there is no evidence Caltrans considered

9    the environmental impact of *any part* of those plans in advance (or was even asked

10   to do so before Plaintiffs sued); or the fact no aspect of the drainage plans now

11   under construction, their adequacy or environmental impact, was ever the subject of

12   NEPA compliant environmental analysis.  Nor does not alleviate Defendants'

13   concerns about a drainage system the OCTA admits required serial redesign

14   (including the modifications disclosed for the first time in the OCTA's opposition

15   papers) *after* the OCTA claims it belatedly learned about the "flooding problem" in

16   2019. (Dkt. 50, 10:19.)

17        Caltrans cites *Price Rd. Neighborhood Ass'n v. U.S. Dept. of Transportation*,

18   113 F.3d 1505, 1509 (9th Cir. 1997) for the premise that "an agency need not start

19   the environmental assessment process anew with every change in a project." (Dkt.

20   43, Opp. 20:14-18.) *Price* is a curious case for Defendants to cite, given the Ninth

21   Circuit there held a supplemental EIS is required whenever proposed changes

22   "result in *significant* environmental impacts that were *not evaluated* in the EIS."

23   *Price Rd. Neighborhood Ass'n v. U.S. Dept. of Transportation*, 113 F.3d 1505,

24   1509 (9th Cir. 1997) (emphasis in original). Moreover, the Ninth Circuit instructed

25   an agency must *timely* determine the significance of the impacts brought about by

26   such proposed change. *Id*. at 1509-10.  **Neither Caltrans or the OCTA disputes**

27   **the "changes" the OCTA's design-builder made to the OCTA's approved**

28

1  **"final" plans are significant.  Nor do they dispute that the design of "final"**

2  **plans three years after publication of the 2015 EIS was significant.** Plaintiffs

3  agree … *Price* is both relevant and controlling.

4       Plaintiffs provided Defendants ample evidence of significant adverse

5  environmental impacts associated with the OCTA's approved "final" plans for the

6  drainage system in question. (See generally, Dkt. 27-3, Tan Decl. ¶¶18, 19, 26-30,

7  32, 33; and Dkt. 27-4, Fleenor Decl. ¶¶19-22, 29.)  Rather than comply with the

8  law, after serially modifying the OCTA's plans, Defendants now simply say

9  Plaintiffs' experts are "simply wrong."  NEPA does not allow for such a response.

10  **B.**  ***Caltrans Avoids The Evidence Demonstrating That The Current Plans***

11      ***Will Have Adverse Environmental Effects***

12       Caltrans argues that Plaintiffs' experts' opinions are "devoid of probative

13  value" because they do not explain historical flooding. (Dkt. 43, Opp. 23:8-14.)

14  This argument falls flat. Caltrans fails to address the elevation issues with the

15  Detention Basin and Defendants' reliance on the wrong hydrology standard—both

16  conclusions that Plaintiffs' experts made to explain how the drainage system will

17  cause significant adverse effects. (Dkt. 27-3, Tan Decl. ¶¶24-31; Dkt. 27-4, Fleenor

18  Decl. ¶¶12-22.) Plaintiffs have presented Defendants with evidence of *significant*

19  adverse environmental effects that will result from the drainage system; this is not

20  "merely 'possible.'"

21  **C.**  **Balance Of The Equities Favors Plaintiffs**

22       To obtain a preliminary injunction, the moving party must show *either* (1) a

23  combination of probable success on the merits and the *possibility* of irreparable

24  injury, or (2) that serious questions are raised and the balance of hardships tips

25  sharply in its favor. These formulations are not different tests but represent two

26  points on *a sliding scale in which the degree of irreparable harm increases as the*

27  *probability of success on the merits decreases*. Under either formulation, the

28

PLAINTIFFS' REPLY ISO INJUNCTION MOTION RE CALTRANS' OPP.

moving party must demonstrate a significant threat of irreparable injury, irrespective of the magnitude of the injury. *Earth Island*, 351 F.3d at 1311-12 (emphasis added).

As further explained in *Bair v. Cal. State DOT*, No. C 10-04360 WHA, 2011 U.S. Dist. LEXIS 72295, at *21-22 (N.D. Cal. July 6, 2011):

> "Our court of appeals requires a balancing test, one that weighs the competing claims of injury by considering 'the effect on each party of the granting or withholding of the requested relief.' *Amoco Prod. Co.*, 480 U.S. at 542. As reviewed above, when the plaintiff has presented serious questions going to the merits, the scale must tip *sharply* in the plaintiff's favor. *Alliance for the Wild Rockies*, 632 F.3d at 1134-35. In other words, the environmental risk were the preliminary injunction not granted must be weighed against the economic loss or other risk were the injunction granted, and the scale must tip sharply on the side of environmental risk." (Italics in original.)

Because of Caltrans' breach of its recorded agreement to "accept" storm water flowing onto and across Plaintiffs' property, flooding has been a regular occurrence. (Dkt. 27-1, Motion, 4:10-6:26.) Significant, widespread flooding occurred less than a year ago. (*Ibid*.) Caltrans admits there is continuing risk, or possibility, of flooding. Any flooding poses a significant threat of irreparable injury. *Lands Council v. McNair*, 537 F.3d 981, 1004 (9th Cir. 2008). At the same time, Plaintiffs have shown probable success by virtue of Defendants' documented total and continuing non-compliance with NEPA vis-à-vis the subject drainage system. Therefore, Plaintiffs have "presented serious questions going to the merits," which showing in turn "tips the scale … *sharply* in [Plaintiff[s'] favor."

1
2

**D.** _**Plaintiffs Should Not Post A Bond For Requiring The State To Follow**_
     _**The Rules**_

3

Caltrans argues that Plaintiffs are not not-for-profit entities and therefore they

4

should be required to post a bond. (Dkt. 43, Opp. 24:22-25:12.)

5

The Ninth Circuit held that plaintiffs' likelihood of success on the merits

6

"tips in favor of a minimal bond or no bond at all." _California ex rel. Van De Kamp_

7

_v. Tahoe Regional Planning Agency_, 766 F.2d 1319, 1326 (9th Cir. 1985). As

8

explained in _Bair v. Cal. State DOT_, No. C 10-04360 WHA, 2011 U.S. Dist.

9

LEXIS 72295, at *21-22 (N.D. Cal. July 6, 2011):

10
11
12
13
14
15
16
17

> "Our court of appeals requires a balancing test, one that weighs the
> competing claims of injury by considering 'the effect on each party of
> the granting or withholding of the requested relief.' _Amoco Prod. Co._,
> 480 U.S. at 542. As reviewed above, when the plaintiff has presented
> serious questions going to the merits, the scale must tip _sharply_ in the
> plaintiff's favor. _Alliance for the Wild Rockies_, 632 F.3d at 1134-35. In
> other words, the environmental risk were the preliminary injunction not
> granted must be weighed against the economic loss or other risk were
> the injunction granted, and the scale must tip sharply on the side of
> environmental risk." (Italics in original.)

18

In _Blair_, the District Court enjoined "[a]ll construction, awards for

19

construction, and formal solicitation or advertising for contracts for construction [of

20

a road widening project] ... pending final decision." 2011 U.S. Dist. LEXIS 72295,

21

at *25. Noting Rule 65(c) generally requires a movant to deposit a security, the

22

District Court went on to describe its "'discretion to dispense with the security

23

requirement, or to request mere nominal security, where requiring security would

24

effectively deny access to judicial review.' _Save Strawberry Canyon v. Dep't of_

25

_Energy_, 613 F. Supp. 2d 1177, 1190-91 (N.D. Cal. 2009) (Alsup, J.) (citation

26

omitted) (requiring no bond)." After doing so, even though plaintiffs consisted of

27

five individuals and three environmental groups, "to not deny these plaintiffs access

28

PLAINTIFFS' REPLY ISO INJUNCTION MOTION RE CALTRANS' OPP.

to judicial review, a bond of $10,000" was ordered.  2011 U.S. Dist. LEXIS 72295, at *25-26.

The Ninth Circuit has a "long-standing precedent that requiring nominal bonds is perfectly proper in public interest litigation." See, *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005) (affirming injunction and bond amount). Despite Caltrans' argument that this is not a public interest case, it is— Plaintiffs seek to enforce the environmental laws and avoid adverse effects to the public. The Court should not require a bond, or, at most, a nominal bond.

## III.   CONCLUSION

Based on the foregoing arguments and those in the Motion and supporting evidence, Plaintiffs respectfully request that this Honorable Court grant the Motion.

DATED: January 27, 2020                 ENTERPRISE COUNSEL GROUP
                                        A Law Corporation

                                        By:   */S/ David A. Robinson*
                                        David A. Robinson
                                        Anjuli B. Woods
                                        Eric G. Salbert
                                        Attorneys for Plaintiffs

9